**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Casey E. Sadler (#274241)
Stan Karas (#222402)
Christopher R. Fallon (#235684)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

*Lead Counsel for Plaintiffs and the Settlement Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re CAPSTONE TURBINE CORPORATION SECURITIES LITIGATION | Lead Case No.: 2:15-CV-08914-DMG-RAOx<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**<br><br>Date:      November 15, 2019<br>Time:      10:00 a.m.<br>Crtm:      8C<br>Judge:    Hon. Dolly M. Gee |

# **TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ...........................................................................1

II.  FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION............2

III.  THE COURT SHOULD APPROVE THE FEE REQUEST ............................2

A.  Lead Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund.........................................................................2

B.  The Court Should Award Attorneys' Fees Based On The Percentage-Of-The-Common-Fund Method.............................................3

C.  Application Of The Factors Considered By Courts In The Ninth Circuit Supports Approval Of The Requested Fee ..................................4

    1.  The Quality Of The Results Achieved Supports The Fee Request.........................................................................................5

    2.  The Substantial Risks Of The Litigation Support The Fee Request.........................................................................................7

    3.  The Skill Required And The Quality Of The Work Favor Approval Of The Requested Fee .....................................................9

    4.  The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Requested Fee ...........11

    5.  A 26.2% Fee Award Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation .....................................13

    6.  The Reaction Of The Settlement Class Supports The Requested Fee .......................................................................................16

D.  A Lodestar Cross-Check Supports The Requested Fee .........................17

IV.  LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ...............................................................................21

V.    PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER THE PSLRA ........................................................23

VI.   CONCLUSION ...................................................................................24

# **TABLE OF AUTHORITIES**

<u>CASES</u>

*Antonopulos v. N. Am. Thoroughbreds. Inc.*,
   1991 WL 427893, (S.D. Cal. May 6, 1991) ........................................... 15

*Banerjee v. Avinger, Inc.*,
   2018 WL 6040194 (N.D. Cal. Oct. 24, 2018) ........................................ 6

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985).............................................................................. 11

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)................................................................................ 2

*Buccellato v. AT & T Operations, Inc.*,
   2011 WL 3348055 (N.D. Cal. June 30, 2011)...................................... 18

*Craft v. Cty. of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................... 14

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016)............................... 9, 11, 17

*Ellison v. Steven Madden, Ltd.*,
   2013 WL 12124432 (C.D. Cal. May 7, 2013)......................................... 3

*Fernandez v. Victoria Secret Stores, LLC*,
   2008 WL 8150856 (C.D. Cal. July 21, 2008) ................................. 15, 17

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) ............................................................... 19

*Franco v. Ruiz Food Prods., Inc.*,
   2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ..................................... 22

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ............................................................... 13

*Gonzalez v. City of Maywood*,
　729 F.3d 1196 (9th Cir. 2013) ............................................................................ 18

*Harris v. Marhoefer*,
　24 F.3d 16 (9th Cir. 1994) ............................................................................ 21, 22

*Hensley v. Eckerhart*,
　461 U.S. 424 (1983) ............................................................................................ 5

*Hicks v. Morgan Stanley*,
　2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .................................................... 23

*Hopkins v. Stryker Sales Corp.*,
　2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ................................................. 18, 20

*Hubbard v. BankAtlantic Bancorp, Inc.*,
　688 F.3d 713 (11th Cir. 2012) ............................................................................. 9

*In re Activision Sec. Litig.*,
　723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................... 4, 14

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
　2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ................................................... 10

*In re Alstom SA Sec. Litig.*,
　741 F. Supp. 2d 469 (S.D.N.Y. 2010) ............................................................... 12

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
　2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) ................................................. 23, 24

*In re Amgen Inc. Sec. Litig.*,
　2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .................................................. 18

*In re Apple Computer Sec. Litig.*,
　1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ...................................................... 13

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
　2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ................................................. 8, 13

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
　909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................. 8

*In re Cadence Design Sys., Inc. Sec. and Deriv. Litig.*,
  2012 WL 1414092 (N.D. Cal. Apr. 23, 2012)......................................................20

*In re Cendant Corp. Litig*,
  264 F.3d 201 (3d Cir. 2001) ..............................................................8, 16

*In re CytRx Corp. Sec. Litig.*,
  2018 WL 8950655 (C.D. Cal. Sept. 17, 2018) ...................................................19

*In re Equity Funding Corp. Sec. Litig.*,
  438 F. Supp. 1303 (C.D. Cal. 1977) ...................................................10

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005)..........................................9, 10, 15

*In re Ikon Office Sols., Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ........................................................7

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......................................19, 22, 24

*In re K12 Inc. Sec. Litig.*,
  2019 WL 3766420 (N.D. Cal. July 10, 2019) ...................................................19

*In re Mannkind Corp. Sec. Litig.*,
  2012 WL 13008151  (C.D. Cal. Dec. 21, 2012)...................................................20

*In re Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1996)...................................................21

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...................................................14

*In re Nortel Networks Corp. Sec. Litig.*,
  539 F3d 129 (2d Cir. 2008) ...................................................16

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal 2008).........................................*passim*

*In re Oracle Corp. Sec. Litig.*,
  2009 WL 1709050 (N.D. Cal. June 16, 2009)...................................................12

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...........................................................7, 9, 15

*In re Patriot Am. Hosp. Inc. Sec. Litig.*,
   2005 WL 3801595 (N.D. Cal. Nov. 30, 2005) .....................................20

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ...............................................................19

*In re Se. Milk Antitrust Litig.*,
   2013 WL 2155387 n.3 (E.D. Tenn. May 17, 2013) .............................19

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) .....................................19

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) .....................................................18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ......................................................3, 11, 14

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005)..................................................12

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
   564 U.S. 135 (2011)..............................................................................13

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .........................................16

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998) ................................................................19

*Mauss v. NuVasive, Inc.*,
   2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) .........................................6

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010)..............................................................................12

*Parkinson v. Hyundai Motor Am.*,
   796 F. Supp. 2d 1160 (C.D. Cal. 2010) ................................................... 20

*Retta v. Millennium Prods. Inc.*,
   2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ......................................... 20

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ............................................................. 13

*Roberti v. OSI Sys., Inc.*,
   2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ........................................... 20

*Rodman v. Safeway*,
   2018 WL 4030558 (N.D. Cal. Aug. 22, 2018) ........................................... 5

*Rodriguez v. Disner*,
   688 F.3d 645 (9th Cir. 2012) ................................................................... 4

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................... 4

*Romero v. Producers Dairy Foods, Inc.*,
   2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ......................................... 15

*Singer v. Becton Dickinson & Co.*,
   2010 WL 2196104 (S.D. Cal. June 1, 2010) ........................................... 15

*Spann v. J.C. Penney Corp.*,
   211 F. Supp. 3d 1244 (C.D. Cal. 2016) ................................................... 20

*Stetson v. Grissom*,
   821 F.3d 1157 (9th Cir. 2016) ................................................................... 3

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   2004 WL 1087261 (S.D.N.Y. May 14, 2004) ............................................. 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................... 11

*Todd v. STAAR Surgical Co.*,
   2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ......................................... 24

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ...................................................................... 13

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977) ...................................................................... 3

*Vinh Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................... 4, 6

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................ *passim*

STATUTES

15 U.S.C. § 78u-4(a)(4) ................................................................................ 23

Court-appointed Lead Counsel,[1] Glancy Prongay & Murray LLP ("GPM"), respectfully request that the Court grant its motion for an award of attorneys' fees in the amount of 26.2% of the $5,550,000 Settlement Fund, which equates to $1,454,500, plus interest earned at the same rate as the Settlement Fund.  Lead Counsel also seek reimbursement of: (i) $78,084.47 in litigation expenses that Lead Counsel reasonably and necessarily incurred in prosecuting and resolving the Action; and (ii) $31,000 in costs incurred by Plaintiffs, directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I.    PRELIMINARY STATEMENT

The proposed Settlement, which provides for a payment of $5,550,000 in cash in exchange for the resolution of the Action, represents an extremely favorable result for the Settlement Class, particularly when juxtaposed against the significant obstacles that Plaintiffs would have had to overcome in order to prevail in this complex securities fraud litigation.  In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability, loss causation, and damages. The risk of losing was very real, and it was greatly enhanced by the fact that Lead Counsel would be litigating against a corporate defendant represented by highly-skilled defense counsel under the heightened pleading standard of the PSLRA. Despite these risks, Lead Counsel collectively worked over 2,300 hours over the course of almost four years, and advanced $78,084.47 in hard costs, all on a contingency basis with no guarantee of ever being paid.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated April 12, 2019 (Dkt. No. 118-1) (the "Stipulation"), or the concurrently filed Declaration of Casey E. Sadler (the "Sadler Declaration" or "Sadler Decl.").  Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in and exhibits to the Sadler Declaration.

Lead Counsel believe that the requested attorneys' fee award of $1,454,500 (or 26.2%) properly reflects the many significant risks undertaken by Lead Counsel, as well as the excellent result achieved in this hard-fought and difficult litigation. When examined under either the percentage-of-the-fund or the lodestar method for calculating attorneys' fees, the requested fee is reasonable and well within the range of attorneys' fees awarded in similar complex, contingency cases. In fact, the requested fee, which was the amount negotiated directly by one of the Lead Plaintiffs, is only slightly more than the 25% benchmark in the Circuit and is significantly less than is often approved in similar-sized cases.

In addition, the costs and expenses requested by Plaintiffs and their counsel are likewise reasonable in amount, and they were necessarily incurred in the successful prosecution of the Action. Accordingly, they too should be approved.

## II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

The Sadler Declaration is an integral part of this submission. For the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*, the factual and procedural history of the Action (¶¶ 9-51); the nature of the claims asserted (¶¶ 17-32); the negotiations leading to the Settlement (¶¶ 37-51); the risks and uncertainties of continued litigation (¶¶ 55-64); and the services Lead Counsel provided for the benefit of the Settlement Class (¶¶ 14-46, 65-72, 81-87).

## III.    THE COURT SHOULD APPROVE THE FEE REQUEST

### A.    Lead Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund

It is well-settled that attorneys who represent a class and are successful in recovering a common fund for the benefit of class members are entitled to a reasonable fee from the common fund as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is

entitled to a reasonable attorney's fee from the fund as a whole.").[2]  Similarly, the Ninth Circuit has held that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it.") ("*WPPSS*"); *accord Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016).  This rule, known as the "common fund" doctrine, is "designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal 2008).

## B.  The Court Should Award Attorneys' Fees Based On The Percentage-Of-The-Common-Fund Method

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Notwithstanding that discretion, where there is an easily-quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method used. *See, e.g.*, *Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"); *Omnivision*, 559 F. Supp. 2d at 1046 (same).

Most courts have found the percentage approach superior in cases with a common fund recovery because it parallels the use of percentage-based contingency

---

[2] Unless otherwise indicated, all emphasis is added, and all internal citations and quotations are omitted.

fee contracts, which are standard in private litigation.  Additionally, the percentage approach aligns the lawyers' interests with that of the class in achieving the maximum possible recovery and reduces the burden on the Court by eliminating the detailed and time-consuming lodestar analysis.  *Omnivision*, 559 F. Supp. 2d at 1046; *see also Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (lodestar/multiplier method "adds to the work load of already overworked district courts").

Accordingly, Lead Counsel respectfully request that the Court award attorneys' fees in this case on a percentage-of-the-fund basis.

**C.**   **Application Of The Factors Considered By Courts In The Ninth Circuit Supports Approval Of The Requested Fee**

Courts in the Ninth Circuit consider certain factors when determining whether a fee award is "reasonable under the circumstances."  *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).  Those factors include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases.  *See Omnivision*, 559 F. Supp. 2d at 1046-48 (citing *Vizcaino*, 290 F.3d at 1048-51).  The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances.  *Vizcaino*, 290 F.3d at 1048-50.  As demonstrated below, each of these factors, along with the lodestar cross-check, weigh in favor of approving the requested fee.

### 1.    The Quality Of The Results Achieved Supports The Fee Request

Courts have consistently acknowledged that the quality of the results achieved is the most important factor in determining an appropriate fee award.  *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Rodman v. Safeway*, 2018 WL 4030558, at *3 (N.D. Cal. Aug. 22, 2018); *Omnivision*, 559 F. Supp. 2d at 1046.

The $5,550,000 proposed Settlement is an excellent result for the Settlement Class, both quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded through a decision on class certification, summary judgment and trial.  Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on each of their claims, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation as to each of the four stock price drop dates alleged in this case—*i.e.*, Plaintiffs' ***best case scenario*** – the total ***maximum*** damages would be approximately $29.8 million.  Thus, the $5,550,000 million Settlement Amount represents over 18.6% of the total ***maximum*** damages potentially available in this Action.  *See* Declaration of Michael A. Marek in Support of Plaintiffs' Unopposed Motion for Entry of Order Preliminary Approving Settlement (Dkt. No. 120-1), at ¶ 21.  In comparison, the median recovery in securities class actions in 2018 was approximately 2.6% of the estimated damages.  *See* Ex. 2 (Stefan Boettrich and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review (NERA Jan. 29, 2019)) at p. 36, Fig. 28.

Furthermore, courts in this Circuit have routinely found that a favorable recovery – such as the highly favorable 18.6% recovery here – "weighs in favor of

an upward adjustment from the 25 percent benchmark."[3]  *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *6 (S.D. Cal. Dec. 6, 2018) (awarding 30% of $7.9 million settlement representing approximately 23 to 34 percent of the maximum damages); *see also Omnivision*, 559 F. Supp. 2d at 1046 (awarding 28% finding that the $13.75 million settlement representing 9% of possible damages or "more than triple the average recovery in securities class action settlement" was a "substantial achievement on behalf of the class, and weigh[ed] in favor of granting the requested 28% fee"); *Radient Pharm.*, 2014 WL 1802293, at *9 (overruling objection and awarding 28% of $2.5 million settlement because the requested fees, which are "only slightly above the standard benchmark" are justified where the "settlement achieved very good results, accounting for a large percentage of the maximum estimated loss"); *Banerjee v. Avinger, Inc.*, 2018 WL 6040194, at *1-2 (N.D. Cal. Oct. 24, 2018) (awarding 30% of $5 million settlement representing approximately 7.7% of the recoverable damages).

Moreover, there were significant risks to proving and recovering Plaintiffs' ***maximum*** estimated damages.  Defendants would likely have argued at summary judgment that the August 7, 2014 and October 1, 2015 disclosures were not corrective since the disclosures on those dates were allegedly unrelated to the fraud. On both of these dates, the Company announced lower-than-expected revenue to the market.  Defendants would have argued that these revenue misses were the actual cause of the stock decline, not the issues related to the Company's accounts receivable and Russian distributor issues, as alleged by Plaintiffs.  If this argument were accepted and those two disclosure dates were removed, Plaintiffs' damages would be decreased to approximately $11.7 million.  Under this scenario, the $5,550,000 recovery equates to 47.7% of the ***maximum*** recoverable damages.

---

[3] *See* § III.C.5, *infra*, for a more detailed discussion about the Ninth Circuit's benchmark and the customary fees awarded.

Accordingly, Lead Counsel's efforts have resulted in a recovery of between 18.6% and 47.7% of the Settlement Class's damages.  ¶ 53.  Given the range of possible results in this litigation, there can be no question that the recovery constitutes a considerable achievement and weighs strongly in favor of the requested fee.

### 2.    The Substantial Risks Of The Litigation Support The Fee Request

The second factor courts in this Circuit consider in awarding attorneys' fees is "[t]he risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding attorneys' fees "justified because of the complexity of the issues and the risks").  While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly.  *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA.").[4]  This Action was no exception.

Although Lead Counsel believe that the claims of Plaintiffs and the Settlement Class are meritorious, Lead Counsel also recognized that there were a significant number of risks from the outset of the litigation and that Plaintiffs' ability to succeed at trial and obtain a substantial judgment was far from certain. *See* ¶¶ 55-64, 89-93.  Indeed, Plaintiffs prevailing on their claims at the pleading stage did not guarantee a recovery at trial.  As discussed in greater detail in the Sadler Declaration, there were substantial risks with respect to establishing both

---

[4] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

liability and damages.  ¶¶ 55-61.  For instance, Defendants forcefully argued that Plaintiffs would not be able to establish that Defendants' statements were in fact false or that they acted with scienter.  Specifically, Defendants have consistently maintained that their Settlement Class Period statements concerning Capstone's revenue and accounts receivable were made in good faith, in particular because Defendants had a reasonable belief that BPC would ultimately pay for products as it had always done in the past.  Additionally, Defendants have consistently argued that the backlog was accurate as it did not contain any cancelled orders.  Plaintiffs faced the risk that at trial the jury would have found Defendants' explanation of events more believable.

Additionally, Defendants would have continued to assert that Plaintiffs could not sufficiently allege loss causation for all of the purported disclosures dates and that the damages were minimal. Although Plaintiffs believed that they had meritorious arguments in response to Defendants' assertions, it simply cannot be disputed that the Parties held extremely disparate views on loss causation and damages, and had Defendants' arguments been accepted in whole or part, they would have dramatically limited or foreclosed any potential recovery.   *See In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig*., 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."); *In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

Each of these issues would have been the subject of substantial expert testimony based on many assumptions, any of which could have been rejected by the Court or a jury as speculative or unreliable.  *See, e.g.*, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted

defendants' motion for judgment as a matter of law because there was insufficient evidence to support a finding of loss causation), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

In sum, the risks posed by litigation were substantial, and they were present every step of the way. Accordingly, this factor weighs heavily in favor of the requested fee award. *See Pac. Enters.*, 47 F.3d at 379 (finding attorneys' fees of 33%  percent "justified because of the complexity of the issues and the risks"); *see also Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) (approving requested fee and noting that, "[a]s to the second factor . . ., the risks associated with this case were substantial given the challenges of obtaining class certification and establishing the falsity of the misrepresentations and loss causation"); *Omnivision*, 559 F. Supp. 2d at 1047 (noting risk of litigation, including plaintiffs' ability to prove loss causation and risk defendants would prevail on damages, supported requested fee).

### 3. The Skill Required And The Quality Of The Work Favor Approval Of The Requested Fee

The third factor courts consider in determining what fee to award is the skill required and the quality of the work performed. To this end, courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities," *Omnivision*, 559 F. Supp. 2d at 1047, and that "[t]he experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005). "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047.

Here, the attorneys at GPM are among the most experienced and skilled practitioners in the securities litigation field, and the firm has a long record of successfully prosecuting securities cases throughout the country, including within

this Circuit.  *See* ¶ 87, Ex. 4 (GPM Firm Resume).  From the outset of this case, Lead Counsel sought to obtain the maximum recovery for the class.  Lead Counsel devoted substantial amounts of attorney and staff time, as well as its own money and other considerable resources in the vigorous prosecution of this matter.  ¶¶ 81-87.  As a result of Lead Counsel's work, Plaintiffs were able to plead detailed allegations based on counsel's extensive investigation; vigorously oppose Defendants' two motions to dismiss and ultimately prevail despite the PSLRA's heightened pleading; work with experts and consultants to present strong counterarguments to Defendants' positions on falsity, loss causation and damages; engage in significant informal discovery and a highly contentious mediation process that required two rounds of briefing to the mediator; and negotiate an all-cash settlement that represents 18.6% to 47.7% of the Settlement Class's estimated damages in a case where Defendants aggressively disputed every element of Plaintiffs' claims and the potential for recovering nothing was stark.  ¶¶ 52-53.  Lead Counsel's extensive efforts and skill led to the Settlement and strongly support the requested fee percentage.

In evaluating the quality of Lead Counsel's work, it is also important to consider the quality and vigor of opposing counsel.  *See, e.g.*, *Heritage Bond*, 2005 WL 1594403, at *20; *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008).  Defendants in this Action were represented by Wilson Sonsini Goodrich & Rosati, a highly-respected national law firm, that mounted a vigorous defense.  ¶ 88.  Lead Counsel's ability to obtain a favorable Settlement in the face of this formidable legal opposition confirms the

1  superior quality of Lead Counsel's work and further supports awarding the

2  requested fee.

### 4. The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Requested Fee

5  The fourth factor in determining a fair and reasonable fee requires courts to

6  consider the contingent nature of the fee and the obstacles surmounted:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

13  *WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F. Supp. 2d at 1047 ("The

14  importance of assuring adequate representation for plaintiffs who could not

15  otherwise afford competent attorneys justifies providing those attorneys who do

16  accept matters on a contingent fee basis a larger fee than if they were billing by the

17  hour or on a flat fee."); *Zynga*, 2016 WL 537946, at *18 ("[W]hen counsel takes on

18  a contingency fee case and the litigation is protracted, the risk of non-payment after

19  years of litigation justifies a significant fee award."). Moreover, the Supreme Court

20  has emphasized that private securities actions such as this "provide a most effective

21  weapon in the enforcement of the securities laws and are a necessary supplement to

22  [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310

23  (1985); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319

24  (2007).

25  Here, Lead Counsel have received no compensation to date, invested 2,300.50

26  hours of work equating to a total lodestar of $1,398,140.25, and advanced expenses

27  of $78,084.47 to prosecute and resolve this Action. Additional work in

28  implementing the Settlement and claims administration will also be required. Since

the inception of this case, Lead Counsel have borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses.

The risk of no recovery in complex cases like this one is very real. Lead Counsel know from personal experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed. *See, e.g.*, *In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal. Dec. 17, 2018) (GPM served as Co-Lead Counsel in case where, after more than five years of litigation, a plethora of foreign discovery, the expenditure of many millions of dollars in attorney time and hard costs, as well as a multi-week trial, the jury returned a verdict in favor of defendants alleged to have conspired to fix the prices of Korean ramen noodles).

And Lead Counsel are not alone. There are many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiff's bar produced no attorneys' fees for counsel. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing significant and expensive foreign discovery, 95% of plaintiffs' damages were eliminated by Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), of unbroken circuit court precedent over 40 years). Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).[5] Even plaintiffs who get past

---

[5] *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009), *aff'd* 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to

summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135 (2011)).[6]

Here, because Lead Counsel's fee was entirely contingent, the only certainties were that there would be no fee without a successful result and that such result would only be realized after significant amounts of time, effort, and expense had been expended.  Nevertheless, Lead Counsel committed significant resources of both time and money to vigorously and successfully prosecute this Action for the benefit of the Settlement Class. ¶¶ 81-87.  The contingent nature of counsel's representation strongly favors approval of the requested fee.

### 5.   A 26.2% Fee Award Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation

In *Paul, Johnson, Alston & Hunt v. Graulty*, the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees.  886 F.2d 268, 272 (9th Cir. 1989); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (reaffirming 25% benchmark).  However, "a reasonable fee award is the hallmark of common fund cases" and the guiding principle in this Circuit is that a

---

defendants after eight years of litigation and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing lodestar of approximately $48 million).

[6] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial).

fee award be "***reasonable under the circumstances***." *WPPSS*, 19 F.3d at 1295 n.2.[7] As applied, this means that "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *see also Activision*, 723 F. Supp. at 1373 (surveying securities cases nationwide, awarding 32.8% fee from $3.5 million fund, and noting: "This court's review of recent reported cases discloses that nearly all common fund awards range around 30%[.]").  This is especially true in cases with "relatively small" common fund settlements.  *See Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 million will often result in fees above 25%.").  Indeed, empirical research by NERA, an economics consulting firm, found that the median award of attorneys' fees in class action securities cases with a settlement value between five and ten million dollars was 30% between 1996 and 2013, and between 2014 and 2018.  *See* Ex. 2 (NERA Report) at p. 41, Fig. 32.

In view of the result obtained, the contingent fee risk, the number of hours dedicated to this case, and the financial commitment of Lead Counsel, it is respectfully submitted that an award of 26.2% of the recovery obtained for the Settlement Class is appropriate.  Such an award would be consistent with, and even below, attorneys' fee awards in similar, complex, contingent litigation involving relatively small securities settlements such as the $5,550,000 Settlement in this case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of 33-1/3% of $1.725 million settlement); *In re Interlink Elec., Inc. Sec. Litig.*, No. 05-cv-08133 AG (SH), slip op. at 4 (C.D. Cal. June 1, 2009), Dkt. No.

---

[7] *See also Paul, Johnson*, 886 F.2d at 271 ("[I]t is well settled that the lawyer who creates a common fund is allowed an ***extra*** reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.  The amount of such a reward is that which is deemed 'reasonable' under the circumstances.").

165 (Ex. 9) (awarding 33-1/3% of $5 million settlement fund); *Jenson v. First Trust Corp.*, No. CV 05-3124 ABC (CTx), Final Order and Judgment, at 6 (C.D. Cal. June 9, 2008) (awarding 1/3 of an $8.5 million fund), Dkt. No. 134 (Ex. 10); *Hodges v. Akeena Solar, Inc.*, No. 5:09-cv-02147-JW, Amended Order Awarding Lead Counsel Attorneys' Fees and Expenses, eat 1 (N.D. Cal. Dec. 15, 2011) (awarding one-third of $4,770,000 settlement fund), Dkt. No. 167 (Ex. 11); *In re Resonant Inc. Sec. Litig.*, No. 2:15-cv-01970 SJO (MRW) slip op. at ¶ 17 (C.D. Cal. Nov. 22, 2017), Dkt. No. 154 (Ex. 12) (finding an award of 33% of the $2.75 million settlement is "fair and reasonable"); *In re 2TheMart.com, Inc. Sec. Litig.*, No. 99-cv-1127-DOC (ANx), slip op. at 2 (C.D. Cal. July 8, 2002), Dkt. No. 161 (Ex. 13) (awarding 33-1/3% of $2.7 million settlement fund); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and stating "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery") (citing 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)).[8]

Moreover, the requested amount of attorneys' fees is a direct result of an arms-length negotiation with one of the Lead Plaintiffs. Courts have routinely

---

[8] *See also Pac. Enters.*, 47 F.3d at 373 (33% award from $12 million common fund "for attorneys' fees is justified because of the complexity of the issues and the risks"); *Heritage Bond*, 2005 WL 1594403, at *23 (awarding fee of 33.33% of $27,783,000 settlement fund because "courts in this circuit, as well as other circuits have awarded attorneys' fees of  30% or more in complex class actions"); *Elliot v. China Green Agriculture Inc.*, No. 3:10-cv-00648-LRH-WGC, slip op. at ¶ 16 (D. Nev. Aug. 12, 2014), Dkt. No. 166 (Ex. 14) (awarding 33-1/3% of $2.5 million settlement fund); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding of 33.3% of $1 million common fund); *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (34% of $8.5 million common fund); *Antonopulos v. N. Am. Thoroughbreds. Inc.*, 1991 WL 427893, at *4, (S.D. Cal. May 6, 1991) (awarding one-third of $3,098,000 settlement fund).

recognized that a fee arrangement negotiated between counsel and lead plaintiffs, especially PSLRA lead plaintiffs, weighs in favor of finding the requested fees reasonable. *See, e.g.*, *In re Nortel Networks Corp. Sec. Litig.*, 539 F3d 129, 133 (2d Cir. 2008) ("PSLRA lead plaintiffs often have a significant financial stake in the settlement, providing a powerful incentive to ensure that any fees resulting from the settlement are reasonable. In many cases, the agreed-upon fee will offer the best indication of a market rate, thus providing a good starting position for a district court's fee analysis."); *Cendant*, 264 F.3d at 282 ("under the PSLRA, courts should accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel.").

Accordingly, there can be no question that the requested fee of 26.2% is consistent with, and even below, fee awards in similar litigation. Thus, this factor also weighs in favor in awarding the requested fee.

### 6.     The Reaction Of The Settlement Class Supports The Requested Fee

The class's reaction to a proposed settlement and fee request is a relevant factor in approving fees. *See Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009); *Omnivision*, 559 F. Supp. 2d at 1048. Here, the Settlement Class was notified of the Settlement and the request for attorney's fees and reimbursement of Litigation Expenses by a combination of first-class mail, publication, and the settlement website. *See* Ex. 1 (Declaration of Brian Manigault Regarding: (A) Mailing of Postcard Notice; (B) Publication of Summary Notice; (C) Report on Requests for Exclusion and Objections; and (D) the Claims Administration Process (the "Mailing Declaration")). The Court-approved Postcard Notice was sent to 36,656 potential Settlement Class Members and the Court-approved Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire*. *Id.*, ¶¶ 10-11. A dedicated website,

www.CapstoneTurbineSecuritiesLitigation.com, was also created, and relevant dates and documents—including the Postcard Notice, Notice, Stipulation and Claim Form—were posted thereon.[9] *Id.* at ¶ 12.

To date, **no** objections to the requested amounts of attorneys' fees and expenses have been received.[10] ¶ 94; Mailing Decl., ¶ 15. The lack of objections is compelling evidence that the requested fees and expenses are reasonable. *See, e.g.*, *Zynga*, 2016 WL 537946, at *13 ("[T]he lack of objection by any Class Members also supports" granting the requested fee award); *see also Fernandez*, 2008 WL 8150856, at *13 (3 members objected and 29 opted out, indicating favorable result and award of "generous fee"). The reaction of the Class, therefore, weighs heavily in favor of approving the fee request.

*      *      *

For the aforementioned reasons, each of the factors that courts in the Ninth Circuit consider in determining attorneys' fees strongly weighs in favor of awarding Lead Counsel's requested attorneys' fees. Accordingly, the Court should award attorneys' fees in the amount of 26.2% of the Settlement.

### D.    A Lodestar Cross-Check Supports The Requested Fee

Although Lead Counsel seek approval of a fee based on this Circuit's preferred percentage-of-the-fund method, as "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis."

---

[9] Both the Postcard Notice and the Notice informed the Settlement Class that Lead Counsel would apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund. ¶¶ 66, 94; Mailing Declaration, Exs. A & E at ¶¶ 5, 72.

[10] The last day for a Settlement Class Member to submit an objection is October 15, 2019. If any objections are submitted, Lead Counsel will address them in a reply brief.

1   *Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Amgen Inc. Sec. Litig.*, 2016

2   WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the

3   lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-

4   check of the fee request with a lodestar amount can demonstrate the fee request's

5   reasonableness").

6       The lodestar method "calculates the fee award by multiplying the number of

7   hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if

8   necessary, to account for the risks associated with the representation." *Graulty*, 886

9   F.2d at 272.  "Calculation of the lodestar, however, is simply the beginning of the

10  analysis." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y.

11  1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  In the second step of the analysis, a court

12  adjusts the lodestar to take into account, among other things, the time and labor

13  required, the result achieved, the quality of representation, whether the fee is fixed

14  or contingent, the novelty and difficulty of the questions involved, and awards in

15  similar cases.  *See, e.g.*, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th

16  Cir. 2013).  In so doing, "courts have routinely enhanced the lodestar to reflect the

17  risk of non-payment in common fund cases."  *Vizcaino*, 290 F.3d at 1051-52

18  (approving a 3.65 multiplier and finding that when the lodestar is used as a cross-

19  check, "most" multipliers were in the range of 1 to 4, but citing numerous examples

20  of even higher multipliers); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4

21  (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be

22  appropriate in complex class action cases."); *Buccellato v. AT & T Operations, Inc.*,

23  2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (finding "multiplier of 4.3 is

24  reasonable in light of the time and labor required, the difficulty of the issues

25  involved, the requisite legal skill and experience necessary, the excellent and quick

26  results obtained for the Class, the contingent nature of the fee and risk of no

27  payment, and the range of fees that are customary.").

28      Here, Lead Counsel spent more than 2,300 hours of attorney and other

professional support time prosecuting this Action.  *See* ¶ 81.  As is customary in seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, Lead Counsel have submitted a schedule in a sworn declaration identifying the lodestar for individuals at the firm (by individual, position, billing rate, and hours billed)[11] based on current hourly rates.[12]  Using Lead Counsel's hourly rates, which have been recently approved by other courts in this Circuit[13] and are consistent with other attorneys engaged in similar litigation,[14] results in a lodestar figure of $1,398,140.25.  *Id.*  Therefore, the requested fee of

---

[11] *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("Here, counsel have provided sworn declarations from attorneys attesting to the experience and qualifications of the attorneys who worked on the case, the hourly rates, and the hours expended."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) ("[t]he district courts [ ] may rely on summaries submitted by the attorneys and need not review actual billing records"); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 n.3 (E.D. Tenn. May 17, 2013).

[12] Courts use current, rather historic rates, to ensure that "[a]ttorneys in common fund cases [are] compensated for any delay in payment."  *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002); *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

[13] *See In re CytRx Corp. Sec. Litig.*, 2018 WL 8950655, at *1-2 (C.D. Cal. Sept. 17, 2018); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *2 (N.D. Cal. July 10, 2019).

[14] *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award in *2017* following lodestar cross-check "with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals").  Lead Counsel's rates for its partners and associates are also comparable to peer plaintiff and defense firms, including Defendants' counsel, Wilson Sonsini Goodrich & Rosati, litigating matters of similar magnitude.  *See* Ex. 3 (defense counsel rates in complex litigation routinely reach as high as $1,500 per hour or higher).

1  $1,454,500 yields a multiplier of 1.04.[15]

2      The Ninth Circuit and district courts within it have regularly approved

3  multipliers far higher than the requested multiplier here.  *See Vizcaino*, 290 F.3d at

4  1052-54 (approving a 3.65 multiplier); *Retta v. Millennium Prods. Inc.*, 2017 WL

5  5479637, at *13 (C.D. Cal. Aug. 22, 2017) (approving multiplier of "roughly" 3.5);

6  *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016)

7  ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range of

8  reasonable multipliers."); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160,

9  1170 (C.D. Cal. 2010) ("Where appropriate, multipliers may range from 1.2 to 4 or

10  even higher."); *Stryker Sales*, 2013 WL 496358, at *4 ("Multipliers of 1 to 4 are

11  commonly found to be appropriate in complex class action cases.").[16]  Accordingly,

12  a lodestar cross-check further supports the reasonableness of the requested

13  attorneys' fees.

14                          *      *      *

15      In sum, Lead Counsel's requested fee award is reasonable, justified, and in

16  line with what courts in this Circuit award in class actions such as this one, whether

17  calculated as a percentage of the fund or as a multiple of counsel's lodestar.  As

18  discussed above, each of the factors considered by courts in the Ninth Circuit also

19
20  [15] In addition to the time expended to date, Lead Counsel will expend additional
time preparing Plaintiffs' motion for final approval, preparing for and attending the
21  final approval hearing, directing the claims administration process, and filing a
22  motion for final distribution.  Lead Counsel will not seek additional compensation
for this work.

23  [16] *See also Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *7 (C.D. Cal. Dec. 8,
24  2015) (approving multiplier of just under 2.2 in securities fraud class action); *In re
Mannkind Corp. Sec. Litig.*, 2012 WL 13008151, at *8  (C.D. Cal. Dec. 21, 2012)
25  (approving multiplier of 2.3 in securities fraud class action); *In re Cadence Design
Sys., Inc. Sec. and Deriv. Litig.*, 2012 WL 1414092, at *5 (N.D. Cal. Apr. 23,
26  2012) (awarding fee that amounted to 2.88 multiplier); *In re Patriot Am. Hosp.
27  Inc. Sec. Litig.*, 2005 WL 3801595, at *5 (N.D. Cal. Nov. 30, 2005) (approving
28  multiplier of 2.63 in securities fraud class action).

1   strongly supports the reasonableness of the requested fee. Therefore, the Court

2   should grant the requested attorneys' fees of $1,454,500, i.e., approximately 26.2%

3   of the Settlement Fund.

4   **IV.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD**

5       **BE APPROVED**

6       In addition to an award of attorneys' fees, attorneys who create a common

7   fund for the benefit of a class are also entitled to payment of reasonable litigation

8   expenses and costs from the fund. *Omnivision*, 559 F. Supp. 2d at 1048; *In re*

9   *Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). The

10  appropriate analysis to apply in deciding which expenses are compensable in a

11  common fund case of this type is whether the particular costs are of the type

12  typically billed by attorneys to paying clients in the marketplace. *See, e.g.*, *Harris v.*

13  *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award

14  of attorney's fees those out-of-pocket expenses that would normally be charged to a

15  fee paying client."); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover

16  their reasonable expenses that would typically be billed to paying clients in non-

17  contingency matters.").

18      From the beginning of the case, Lead Counsel were aware that they might not

19  recover any of their expenses and would not recover anything unless and until the

20  Action was successfully resolved. Lead Counsel also understood that, even

21  assuming that the case was ultimately successful, an award of expenses would not

22  compensate for the lost use of the funds advanced to prosecute this Action. Thus,

23  Lead Counsel were motivated to, and did, take significant steps to minimize

24  expenses whenever practicable without jeopardizing the vigorous and efficient

25  prosecution of the Action. ¶ 101.

26      In the aggregate, Lead Counsel have incurred expenses in the amount of

27  $78,084.47 while prosecuting the Action, which are set forth in detail in the Sadler

28  Declaration, ¶¶ 97-107. The largest expense was for the retention of experts in the

fields of loss causation, damages and accounting in the amount of $46,005.00, or approximately 58.9% of the total expenses.  ¶ 102.  Other substantial costs included (i) the retention of investigators, which was $12,949.20 or 16.6% of Lead Counsel's total litigation expenses, and (ii) mediation fees charged by Honorable Layn Phillips (ret.), which was $8,006.17  or 10.3% of Lead Counsel's total litigation expenses.  ¶ 104.  Each of these expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly.  Therefore, Lead Counsel's litigation expenses should be reimbursed out of the common fund.  *See Immune Response*, 497 F. Supp. 2d at 1177-78 (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees."); *see also Harris*, 24 F.3d at 19 (approving reimbursement of "service of summons and complaint, . . . postage, investigator, copying costs, hotel bills, meals, messenger service"); *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801, at *22 (E.D. Cal. Nov. 27, 2012) (noting mediation fees are among the "types of fees . . . routinely reimbursed").[17]

---

[17] The Notice informed Settlement Class Members that Lead Counsel intend to apply for the reimbursement for Litigation Expenses incurred by Lead Counsel "in an amount not to exceed $140,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class."  Mailing Declaration,  Ex. E at ¶¶ 5, 72.  Lead Counsel's requested reimbursement of $78,084.47 (plus $31,000 for Plaintiffs) is substantially less than the maximum amount of potential expenses disclosed in the Notice and, to date, there have been no objections to the request for reimbursement of Litigation Expenses.  ¶ 100.

## V.   PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER THE PSLRA

In connection with Lead Counsel's requests for reimbursement of Litigation Expenses, Plaintiffs seek reimbursement of a total of $31,000 in costs (consisting of $22,500 for Lead Plaintiff Randall Kay, $3,500 for Lead Plaintiff Elizabeth Kay, $2,500 for named plaintiff David Kinney, and $2,500 for named plaintiff John Perez). ¶ 99.  The PSLRA permits Plaintiffs in this case to recoup litigation costs (including lost wages) incurred as a result of serving as plaintiffs in the Action and ensuring that the Class was adequately represented.   15 U.S.C. § 78u-4(a)(4). Indeed, courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 2012 WL 345509, at *6 (S.D.N.Y. Feb. 2, 2012).

Here, Plaintiff Randall Kay respectfully requests reimbursement in the amount of $22,500.  *See* Ex. 5 (Declaration of Randall G. Kay), ¶ 10.  As set forth in his declaration, Mr. Kay, who was an extremely active shareholder and had a decade long history as a Capstone investor that had followed the stock and had engaged with Capstone executives and officers, stepped forward to represent the Class and spent approximately 125 hours participating in this Action.  *Id*.  Among other things, Mr. Kay: (a) regularly communicated with Lead Counsel by email and telephone regarding the posture and progress of the case, as well as strategy; (b) reviewed all significant pleadings and briefs filed in the Action; (c) reviewed the Court's orders and discussed them with GPM; (d) collected hundreds of pages of documents, including emails with Capstone executives and officers, in response to Defendants' discovery requests; (e) attended the lead plaintiff hearing; (f) was actively involved in the settlement process and negotiations, including attending the full-day

mediation in person and communicating directly with the mediator, Hon. Layn Phillips (Ret.); (g) consulted with Lead Counsel regarding the settlement, including negotiating a maximum fee request amount with GPM as part of the settlement process; and (h) evaluated and approved the proposed Settlement.  *See Id*. at ¶ 5. Similarly, Lead Plaintiff Elizabeth Kay and named plaintiffs David Kinney and John Perez request reimbursement in the amount of $3,500, $2,500 and $2,500, respectively.  Ex. 6 at ¶ 9; Ex. 7 at ¶ 10; Ex. 8 at ¶ 10.  As set forth in their respective declarations, each of these Plaintiffs devoted between 25 and 35 hours participating in the litigation and representing the Settlement Class.  Ex. 6 at ¶ 9; Ex. 7 at ¶ 10; Ex. 8 at ¶ 10.

Plaintiffs and their counsel respectfully submit that reimbursement of an aggregate of $31,000 for the considerable time and effort Plaintiffs expended for the benefit of the Settlement Class is both reasonable and appropriate.  It is also well below or comparable to reimbursement awards in similar complex cases.  *See, e.g.*, *In re HP Sec. Litig*., No. 3:12-cv-05980-CRB, slip op. at 2 (N.D. Cal. Nov. 16, 2015), Dkt. No. 279 (Ex. 15) (awarding $162,900 to lead plaintiff from settlement fund as "reimbursement for its costs and expenses directly related to its representation of the Settlement Class"); *Immune Response*, 497 F. Supp. 2d at 1173-74 ($40,000 reimbursement to lead plaintiff); *Todd v. STAAR Surgical Co*., 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) ($10,000 award to an individual Lead Plaintiff for the "significant time and effort Lead Plaintiff expended to support this litigation…").[18]

## VI.   CONCLUSION

From the outset of this Action, Plaintiffs and Lead Counsel faced determined adversaries represented by experienced counsel.  With no assurance of success in a

---

[18] To date, no Settlement Class Member has objected to the prospect of the Plaintiffs being reimbursed for their time and effort in this Action.

case presenting substantial risks, Lead Counsel pursued the Action and successfully obtained the $5,550,000 Settlement for the benefit of the Settlement Class.   The Settlement reflects Lead Counsel's determination and efforts in the face of significant risk.   Accordingly, Lead Counsel respectfully submit that the Court should award: (i) Lead Counsel attorneys' fees of 26.2% from the Settlement Fund, plus interest at the same rate as has been earned on the Settlement Fund since it was deposited; (ii) $78,084.47 for Lead Counsel's litigation expenses; and (iii) $31,000 to Plaintiffs for their costs and expenses directly related to their representation of the Settlement Class.

DATED:  September 24, 2019         **GLANCY PRONGAY & MURRAY LLP**


By:   */s/ Casey E. Sadler*
_____
Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
Stan Karas
Christopher R. Fallon
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

*Lead Counsel for Plaintiffs and the Settlement Class*

## PROOF OF SERVICE BY ELECTRONIC POSTING

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.   On September 24, 2019, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on September 24, 2019, at Los Angeles, California.

*s/ Casey E. Sadler*

Casey E. Sadler